EL PUEBLO DE PUERTO RICO, apelado, *v.* VÍCTOR URIEL ÁLVAREZ, acusado y apelante.

*Número:* CR-81-42 *Resuelto:* 17 de marzo de 1982

*Justo Gorbea Varona, Procurador General Interino*, y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados del apelado; *Efraín Meléndez,* abogado del acusado y apelante.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El respeto y fidelidad al principio de legalidad consagrado en el Art. 8 del Código Penal, recogido en la máxima latina "nullum crimen, nulla poena, sine lege previae" —no hay delito ni pena sin ley— complementado por la prohibición de crear delitos por analogía, nos obliga a revocar la sentencia en el presente caso.

El apelante Víctor Uriel Álvarez le adeudaba a Antonio Román $4,000. Desconocemos cuándo y el motivo por el cual incurrió en esa obligación. Para satisfacerla, el 7 de abril de 1978 hizo y entregó un cheque personal a nombre de Román por esa cantidad, girado contra un banco en Miami, Florida. Román, quien a su vez le adeudaba a Erasmo Lai Zayas la suma de $4,800 le endosó el cheque como pago parcial. Este último lo presentó al cobro, pero le fue devuelto debido a que la cuenta bancaria había sido cerrada previamente.

Ante esa situación, tanto Román como Lai se comunicaron e hicieron gestiones infructuosas con Uriel para cobrar el monto del cheque. Uriel quedó en satisfacerlo

luego que obtuviera un dinero producto de una transacción de compraventa de una propiedad. No lo hizo. Por tal motivo, el 23 de enero de 1981, se le formuló la siguiente acusación por el delito de apropiación ilegal agravada: [1]

> El referido imputado, Víctor Uriel Álvarez, allá en o para el mes de abril de 1978, y en Caguas, Puerto Rico, que forma parte del Tribunal Superior de Puerto Rico, Sala de Caguas, Puerto Rico, ilegal, voluntaria, maliciosa y criminalmente, sin violencia ni intimidación, *se apropió de la cantidad de $4,000.00, pertenecientes al señor Erasmo Lai Zayas, con la intención allí y entonces de apropiarse de dicha cantidad de dinero para su propio uso y personal beneficio.* (Énfasis nuestro.)

---

[1] Entre la evidencia sometida hay cuatro cartas dirigidas por correo certificado a distintas direcciones del apelante requiriéndole el pago del cheque sin fondos. La lectura de las mismas refleja que están concebidas como el trámite de *interpelación* estatuido en el Art. 226 del Código, que regula el trámite del delito de expedir cheques sin fondos. 33 L.P.R.A. sec. 4553. Hemos visto que no se acusó por este delito, ya que, como correctamente el Procurador General expone, "el hecho de expedir un cheque contra una cuenta cerrada o inexistente se diferencia sustancialmente de expedir un cheque sin provisión de fondos, delito tipificado por el artículo 264 del Código Penal de 1974 (33 L.P.R.A. sec. 4551)". Este precepto ofrece, como interés penal tutelado, el tráfico o transacción de los denominados instrumentos negociables, cuya característica principal es la sustitución por el valor del dinero en efectivo. *Comentarios al Código Penal Comentado*, 1975, Col. Abo. de P.R., pág. 326. Los elementos esenciales del delito son: (1) con propósito de defraudar; (2) se extienda, endose, o entregue un cheque, giro u orden para el pago, o cualquier banco u otro depositario; (3) a sabiendas de que el emisor o girador no tiene suficiente provisión de fondos en dicho banco o depositario para el pago total de cheque, giro, letra u orden a la presentación del mismo, ni disfruta de autorización expresa para girar en descubierto; y (4) que se efectúe el requerimiento de pago contenido en el Art. 266 y no se satisfaga el mismo.

La lectura integral de estos requisitos demuestra que el legislador lo concibió sobre un supuesto básico: que el girador tenga abierta y activa una cuenta bancaria. Únicamente así hace sentido la referencia a insuficiencia de provisión de fondos y ausencia de autorización para girar al descubierto. Véase C. E. Mascareñas: *Sobre la Protección Penal del Cheque en el Proyecto del Código Penal*, 28 Rev. Der. Puertorriqueño, 389 (1968); Miró Cardona, *Borrador para un Proyecto de Código Penal Puertorriqueño*, 49 Rev. Jur. U.P.R., 601–612 (1972). Esta situación no está presente en el caso de autos. Aquí la cuenta estaba cerrada al emitir el apelante el cheque que motiva el proceso. Su actuación no está cubierta por esta disposición. Contrario sería si en nuestra jurisdicción se adoptase la propuesta hecha por el Código Modelo en su Sec. 224.5, u otra disposición análoga que cubra tal proceder.

Ante tribunal de derecho fue declarado culpable y condenado a cumplir una pena de tres a cinco años de presidio, concurrente con las sentencias impuéstales en los casos G-73-408 y 409.

En su apelación nos señala que la prueba no estableció la comisión del delito de apropiación ilegal agravada y sí la existencia de una obligación civil. Aduce, además, que su culpabilidad no se estableció más allá de duda razonable. Resolvemos.

## I

En su esquema organizativo el Código Penal consigna los delitos contra la propiedad y las defraudaciones, en el Capítulo 269. El subcapítulo I regula específicamente los delitos contra la propiedad, y como primero —destacando así su importancia y frecuencia— en el Art. 165 visualiza la *apropiación ilegal* como la conducta de:

> Toda persona que ilegalmente *se apropiare* sin violencia ni intimidación *de bienes muebles, pertenecientes a otra persona,* será sancionada con pena de reclusión por un término que no excederá de seis meses, multa que no excederá de quinientos (500) dólares, pena de restitución, o cualquier combinación de éstas, a discreción del Tribunal. (Énfasis suplido.) 33 L.P.R.A. sec. 4271.

A su vez el Art. 166 (33 L.P.R.A. sec. 4272) califica de *agravada* tal apropiación ilegal, entre otras razones, cuando el valor fuere o excediere de doscientos dólares.

El texto vigente del Art. 165 tiene su origen y aglutina en una fórmula los Arts. 426, 429, 432–437, 440–443, 444a, 445–455, 468, 470, 470a, 473, 475, 510 (33 L.P.R.A. secs. 1681, 1684, 1687–1692, 1695–1698, 1700, 1721–1731, 1813, 1815, 1816, 1819, 1821 y 2035) del Código Penal derogado los cuales individualmente tipificaban los delitos de hurto, hurto de energías, hurto de uso, hurto de cosa perdida, abuso de confianza y falsa representación. Además cubre los delitos que jurisprudencialmente se conocían como

hurto mediante treta y engaño y estafa. Se aparta así de la técnica de la exposición casuística. Tres razones movieron a sus redactores a esta consolidación: (1) eliminar la confusión que traía la diversificación de tantos elementos en esos artículos, en vista de que lo esencial era probar si la persona se había apropiado ilegalmente de bienes ajenos; (2) tratar científicamente una conducta similar entre delitos igualmente nociva; y (3) evitar y superar dificultades procesales perjudiciales a la eficaz administración de la justicia, que surgían de las limitaciones —y a veces confusos conceptos— entre los delitos tradicionales contrapuestos al denominador común delictivo de una misma conducta penada por distintos delitos que sólo permitía una acusación. *Comentarios al Código Penal de Puerto Rico*, 1975, Ed. Col. Abo., págs. 204–206.

Ese enfoque respondió al llamado jurisprudencial hecho en *Pueblo v. Rodríguez Vallejo*, 100 D.P.R. 426, 432 (1972), donde, en ocasión de reconocer como error que la prueba no había establecido el delito de hurto sino el de falsa representación o de abuso de confianza, expusimos:

> Lo importante, desde luego, y lo cual debiera ser *el elemento esencial en todos los casos de apropiación ilegal de bienes, es si el acusado se apropió ilegalmente o no de unos bienes que no eran suyos.* Poco debiera importar para hacer justicia si los hurtó, o si se los apropió luego "de que le fueron confiados," etc. Como bien señalan algunos autores la apropiación ilegal de bienes ajenos debe constituir un solo delito, el cual podría llamarse hurto, pues el nombre no es lo importante, y así se eliminaría la fuente de confusión que constituye la división arbitraria de ese hecho punible en varios delitos estatutarios. (Escolios omitidos.) (Énfasis suplido.)

Véanse también *Pueblo v. Padró Ríos*, 105 D.P.R. 713 (1977); *Pueblo v. Concepción Sánchez*, 101 D.P.R. 17, 22 (1973).

En resumen, la metodología observada en el nuevo Código Penal agrupa una gama de conducta delic-

tiva que, como elemento común, conlleva la transferencia temporal o permanente y voluntaria apropiación de una propiedad mueble, sin mediar consentimiento, obtenida por ardid, fraude, simulación, trama, treta "o mediante cualquier forma de engaño" a la víctima. En afán de cumplir con el principio de legalidad, el legislador ha intentado desafiar la imaginación del delincuente, y salir victorioso haciendo una fórmula en síntesis, de las especies típicas y modalidades de la apropiación ilegal. En ese sentido los conceptos claves del actual Art. 165 son "apropiarse" y "bienes muebles". El primero, por definición comprende el "malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse *o en cualquier forma hacer propia cualquier bien o cosa en forma temporal o permanente"*. Art. 7(5).

Observamos que el Código Penal contempla todas las formas clásicas de desposesión, despojo o interrupción de la custodia, posesión propia o propiedad —aquello que conlleva el aprehender una cosa y trasladarla— pero también abarcadoramente comprende todos los otros modos de lograr la posesión, transitoria o no, de un bien o cosa.

■ *Bienes muebles* "[i]ncluye dinero, mercancías, semovientes, servicios, vehículos de motor o cualquier objeto de locomoción, energía eléctrica, gas, agua u otro fluido, *cosas cuya posesión puede pedirse en juicio, comprobantes de crédito, o cualquier otro objeto susceptible de apropiación"*. Art. 7(8). Otra vez la técnica de una visión completa definitoria que como elemento general presenta la característica de estimar un bien mueble como objeto o sustancia tangible corporal, material, susceptible de ser aprehendida y tambíén de ser medida, transportada y suministrada como el agua, gas, electricidad.

## II

■ El delito de apropiación ilegal aspira a la protección del patrimonio. Así, para su configuración el

elemento indispensable es el que el imputado se apropie o advenga en posesión ilegal de bienes muebles pertenecientes a otra persona. ¿De qué bienes muebles se apropió el apelante Uriel? ¿Cómo lo hizo? ¿Fue ilegal? La prueba exclusiva que tuvo ante su consideración el tribunal sentenciador fue de tipo documental. Estamos en igual situación que dicho foro para apreciarla. Su examen no revela qué bienes fueron objeto de previa transferencia entre el apelante y Román en la transacción que motivó la deuda. Tampoco demuestra —arguyendo que la hubo— la fecha en que se originó la deuda. Solamente podemos inferir que era una obligación preexistente al momento de hacer y entregar el cheque.

La tesis del Estado es que tal actuación está cubierta por el delito de apropiación ilegal agravada —por constituir conducta que estaba comprendida en el derogado Art. 467, inciso (3), 33 L.P.R.A. sec. 1812(3), que quedó incluida en el Art. 165— es incorrecta. El anterior Art. 467 regulaba los delitos de falsa representación para otros fines.[2] Su rasgo principal era usurpar una personalidad ajena. Así, en *Pueblo* v. *Bahamundi Borrero*, 86 D.P.R. 540, 545 (1962), indicamos:

La esencia de esta modalidad del delito de falsa representación consiste en que la persona acusada haya personi-

---

[2] "Incurrirá en pena de cárcel por un período máximo de dos años, o multa máxima de cinco mil dólares, *toda persona que fraudulentamente se hiciere pasar por otra persona*, y bajo este carácter usurpado, cometiere cualquiera de los actos siguientes:

1. *Para servir de fiador.* Servir de fiador a una persona en cualquier procedimiento ante algún tribunal o funcionario autorizado para exigir dicha fianza o caución.

2. *Reconocer documentos.* Comprobar, publicar, reconocer o probar en nombre de otra persona cualquier documento, con el propósito de que sea registrado, entregado o utilizado como verdadero.

3. *Para otros fines. Realizar cualquier otro acto en cuya virtud, de realizarlo la persona que falsamente pretenda ser, podría en determinada contingencia, exponer a ésta a algún pleito o proceso, o al pago de cualquiera cantidad, o sobrevenirle cualquier gravamen, embargo, multa o pena, o por el cual pudiera beneficiarse el usurpador o cualquiera otra persona.*"

ficado falsamente a otra y que en tal carácter realice cualquiera de los actos especificados en el estatuto. *Rayner* v. *State*, 228 P. 500. Y ya hemos visto que el inciso 3 del artículo 467 especifica los siguientes actos: (a) que en determinada contingencia, pueda exponer a la persona usurpada a algún pleito o proceso; (b) o al pago de cualquier cantidad; (c) o sobrevenirle cualquier gravamen, embargo, multa o pena; y (d) o por el cual pudiera beneficiarse el usurpador o cualquiera otra persona.

Nuestra más fértil imaginación judicial no nos permite concebir y afirmar que el apelante Uriel Álvarez personificara falsamente a otra persona al expedir un cheque contra su cuenta cerrada. Nunca se situó en los zapatos de otro, sino, por el contrario, siempre se mantuvo en los suyos. Tampoco *El Pueblo* v. *Cruz*, 41 D.P.R. 471 (1930), invocado por el Estado es aplicable, por ser claramente distinguible. Allí Cruz fue acusado y convicto bajo el entonces Art. 490, ya que, valiéndose de falsas y fraudulentas simulaciones, expidió dos cheques sin fondos *y obtuvo su importe de dos personas distintas.* En apelación, al resolverle en su contra la contención de que las denuncias no aducían hechos constitutivos de materia delictiva, y menos falsa representación, indicamos:

¿Qué mayor falsa representación que presentar como genuinos cheques que constan al que los presenta que son falsos? *¿Y qué otro fraude más claro que obtener de una persona inocente dinero a virtud de tal falsa representación?* No se necesita que la denuncia exprese que el acusado dijo al perjudicado que el cheque *era genuino* y logró convencerlo de ello. El acto de la presentación del cheque para su canje, es superior al dicho, y lo comprende todo en sí mismo.

Tampoco era necesario expresar más detalladamente la referencia a los bancos que las denuncias contienen. Los bancos no fueron las personas perjudicadas. Estas fueron Francisco Betancourt e Hipólito González, que están perfectamente identificados.

No era necesario por último que se alegara que la firma de Rufino Ruiz y Rufino Díaz que aparecían en los cheques

eran falsas. *Lo que se necesitaba expresar como se expresó era que los cheques eran falsos y el acusado sabiendo que lo eran los presentó a los perjudicados como genuinos y logró defraudarlos en su importe al obtener de ellos que se los hicieran efectivos.* (Énfasis suplido.) Págs. 472-473.

 En el caso de autos, si bien al igual que en *Cruz*, el apelante hizo y usó un cheque falso e ilegítimo —no había cuenta que respondiera— distinto al de *Cruz*, la acción de entregarlo a su acreedor Román y éste endosarlo a su acreedor Lai, *no* generó traspaso de dinero alguno ni conllevó apropiación de bien mueble por la peculiar situación presentada. A lo sumo, únicamente podríamos en teoría sostener que la acción del apelante Uriel fue obtener el beneficio, ventaja o utilidad temporal del crédito o valor que de su faz representaba ese cheque. Sin embargo, advertimos que no hubo desplazamiento patrimonial alguno. El crédito que presuponía la deuda y que existía previamente quedó vigente e inalterado. No hubo apropiación de bienes ni lesión patrimonial. Recordemos que el cheque, como letra de cambio, no surte el efecto de cesión de cantidad alguna, hasta tanto se acepte por el banco o éste lo certifique. Arts. 538 y 542, *Código de Comercio*, 19 L.P.R.A. secs. 362 y 366. Aclaramos, sin embargo, que ello no significa que una persona que haga y circule un cheque *sin tener cuenta* en el banco *y obtenga específicamente bienes muebles —dinero, servicios, etc.— a cambio de éste*, no pueda, en casos apropiados, ser acusada y convicta de apropiación ilegal. (3)

---

(3) El Estado también nos señala el concepto de *"apropiación"* como que "[i]ncluye *defraudar, en cualquier forma, hacer propia cualquier bien o cosa en forma temporal o permanente"*, para sostener que existe apropiación mediante defraudación. Es correcto que la definición de apropiar es amplia e incluye una variedad de modalidades, entre ellas el fraude, pero aun así es indispensable que al efectuarse el fraude se obtengan de la persona defraudada bienes muebles. O sea, que el acusado se apropie ilegalmente —mediante fraude— de unos bienes que no eran suyos. El fraude únicamente es el medio o mecanismo. Sin transferencia de propiedad mueble no se consuma el delito.

■ A la luz de lo expresado, y en las circunstancias específicas del caso, erró el tribunal sentenciador al declarar al apelante culpable del delito de apropiación ilegal agravada. *Se dictará sentencia revocatoria.* (⁴)

El Juez Asociado Señor Díaz Cruz concurre en el resultado, sin opinión.

---

(⁴) Esta decisión —circunscrita a las circunstancias particulares apuntadas— no deja en total estado de abandono a la sociedad contra este tipo de conducta delictiva. La acción del apelante era sancionable por el delito de *falsificación* de documentos establecido en el Art. 271, cuya redacción, por su síntesis, es abarcadora de la disciplina de la falsedad documental. El elemento esencial *es la intención de defraudar* y contempla dos modalidades: (1) *hacer* en todo o *parcialmente* un documento, instrumento o escrito falso y (2) alterar, imitar, suprimir o destruir, total o parcialmente uno verdadero. El documento falso puede *crear*, transferir, terminar o afectar cualquier derecho, obligación o interés.

Aunque en la conducta delictiva de falsa representación sumergida en la apropiación ilegal, al igual que en la falsificación "existe un elemento común a ambos, cual es la intención de defraudar . . . cuando para llevar a efecto el fraude falsamente se altera, falsifica, hace o emite cualquier título, documento, obligación, *cheque*, etc., *el delito que se comete es el de falsificación . . .*". *Pueblo* v. *Peraza*, 53 D.P.R. 588, 590 (1938).

Así ocurrió en el caso de autos. De ordinario visualizamos la falsificación de documentos únicamente bajo la óptica clásica de imitar, alterar o falsear la firma de otro o de manera material redactar un documento que no nos pertenece, sea público o privado. Nada más lejos de la verdad. La falsedad es material en el sentido de que la verdad cambiada recae sobre un objeto tangible —documento— creándolo o alterando uno legítimo. El apelante *hizo* falso, aunque parcialmente un documento: el cheque. A los fines del delito es irrelevante y nada importa que en su origen el cheque, como documento no cumplimentado, estuviera legítimamente en su poder. La falsificación *parcial* consistió en haberle puesto una fecha, nombre del acreedor, cantidad y su firma, y así suplirle los elementos y datos necesarios para hacerlo, como instrumento negociable, válido de su faz. En otras palabras, maliciosamente, a sabiendas de que carecía de una cuenta que respaldara ese cheque lo cumplimentó, llenó y firmó, completando y supliendo de ese modo todos los requisitos para hacerlo en apariencia legítimo. Mediante tal conducta fraudulenta —ardid y engaño— no sólo simuló y representó poseer una cuenta bancaria activa y legítima, sino que hizo falsamente el cheque y con ello dio vida a un documento representativo de $4,000 poniéndolo en circulación al entregarlo como bueno y legítimo a su acreedor Román.