EL PUEBLO DE PUERTO RICO, apelado, *v.* CRUZ LÓPEZ ROSARIO, acusada y apelante.

*Número:* CR-87-51        *Resuelto:* 29 de junio de 1990

---

*Moisés Abreu Cordero*, abogado de la apelante; *Norma Cotti Cruz*, *Subprocuradora General*, y *Josefa A. Román García*, *Procuradora General Auxiliar*, abogadas de El Pueblo.

## SENTENCIA

Por unos hechos alegadamente ocurridos el día 23 de abril de 1985 en jurisdicción del pueblo de Bayamón, Puerto Rico, el Ministerio Fiscal radicó acusación contra la aquí apelante, Cruz López Rosario, ante el Tribunal Superior de Puerto Rico, Sala de Bayamón, por el delito de apropiación ilegal, Art. 165 del Código Penal, 33 L.P.R.A. sec. 4271.

Conforme la teoría y la prueba presentada por el Ministerio Público durante el juicio ventilado ante Jurado, desde el año de 1982 Cruz López Rosario venía administrando una entidad denominada Grupo Cristiano de Ahorro y Crédito que operaba como una cooperativa sin la correspondiente aprobación de la Administración de Fomento Cooperativo. Entre los beneficios que comprendía el pertenecer a la referida organización se encontraba el de facilitar préstamos a los miembros que figurasen como accionistas de la entidad.

El Sr. Abraham Román Ambert, quien fungía como socio del Grupo Cristiano de Ahorro y Crédito desde el año de 1984, se personó a la oficina de la organización, donde fue atendido por la apelante, con el propósito de gestionar un préstamo. Como resultado de su solicitud, la apelante le indicó que para cualificar para un préstamo de $9,000 era necesario que adquiriese $3,000 adicionales en acciones de la organización. A estos efectos, el día 25 de abril de 1985 el señor Román Ambert le hizo entrega a la apelante de un cheque por la suma de $3,031.07, para adquirir las acciones necesarias para la tramitación del préstamo. El referido cheque fue producto de un préstamo que el Sr. Abraham Román Ambert obtuvo en el Banco Central, sucursal de Manatí, escasamente dos (2) días antes de entregarlo a la apelante. El 25 de abril

de 1985 el cheque por la suma de $3,031.07, en lugar de ser depositado en la cuenta del Grupo Cristiano de Ahorro y Crédito en el Banco Popular de Puerto Rico, fue depositado y cobrado en una cuenta distinta, a nombre de Puerto Rico Fathers & Sons, Inc., en el Bayamón Federal Savings & Loan Association, en la cual la apelante estaba autorizada a firmar y retirar fondos. Posteriormente, el día 6 de mayo de 1985, el Grupo Cristiano de Ahorro y Crédito se acogió al Capítulo 11 de la Ley de Quiebras federal.

La única prueba presentada por la defensa se circunscribió a la minuta de la reunión de la junta de directores del Grupo Cristiano de Ahorro y Crédito donde se autorizaba la radicación ante la Corte de Quiebras del Tribunal federal de una petición bajo el Capítulo 11 de la Ley de Quiebras federal. Ambos documentos, por razones obvias, estaban redactados en el idioma inglés.

Desfilada la prueba ante el Jurado, la apelante fue declarada culpable y convicta del delito imputado. Como consecuencia de ello, el Hon. Jorge Busigó Cifre, sentenció a la apelante a cumplir diez (10) años de reclusión, denegándole los beneficios de una sentencia suspendida. Inconforme, Cruz López Rosario radicó escrito de apelación ante este Tribunal imputando la comisión de ocho (8) errores. Además instó un recurso de hábeas corpus donde planteó, en síntesis, que se violó su derecho al debido proceso de ley en la medida en que se le denegaron los beneficios de una sentencia suspendida por, alegadamente, no estar en disposición de llevar a cabo la restitución del dinero en controversia.

El 5 de junio de 1987 procedimos a consolidar el recurso de apelación con el recurso de hábeas corpus y ordenamos la excarcelación de la apelante previa fijación de fianza en apelación. El Procurador General de Puerto Rico ha comparecido. Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

## I

Discutimos los señalamientos de error en la forma y manera en que lo hace la representación legal de la apelante.

Mediante el primer señalamiento de error, la apelante alega que se violó su derecho constitucional a un juicio justo y al debido proceso de ley al denegarse su solicitud *de que se tradujeran* al español los documentos presentados por ella en evidencia. Somos del criterio de que el señalamiento de la apelante no conlleva el alcance que ésta pretende.

La Ley del Idioma de 1902 (1 L.P.R.A. sec. 51 y ss.), *según interpretada en Pueblo v. Tribunal Superior*, 92 D.P.R. 596 (1965), dispone que el idioma a emplearse en los tribunales de Puerto Rico será el español y cuando sea necesario, se harán traducciones de un idioma a otro. En el caso de autos, los procedimientos contra la apelante se condujeron en el idioma español. El tribunal no venía en la obligación de traducir al idioma español los documentos que la apelante presentó en evidencia. Esa obligación le correspondía a la apelante. De todas formas, la información contenida en los mismos llegó ante la consideración de los señores del Jurado. La defensa, durante el turno de informes al Jurado, se encargó de ello.

## II

La Regla 110 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece que:

> En todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá. Si la duda es entre grados de un delito o entre delitos de distinta gravedad[,] sólo podrá condenársele del grado inferior o delito de menor gravedad.

Precisamente a ese punto van dirigidos los señalamientos de error segundo, tercero y cuarto. Los mismos versan sobre la duda razonable y la suficiencia en derecho de la prueba presentada. Somos de la opinión que la prueba que desfilara ante el tribunal de

instancia es suficiente, como cuestión de derecho, para sostener la convicción.

Uno de los principios más firmemente establecidos en nuestra jurisdicción establece que no intervendremos con la apreciación de la prueba en ausencia de pasión, prejuicio o parcialidad. Véanse: *Pueblo v. Mendoza Lozada*, 120 D.P.R. 815 (1988); *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 653–654 (1986); *Pueblo v. Miranda Ortiz*, 117 D.P.R. 188, 191 (1986); *Pueblo v. Millán Meléndez*, 110 D.P.R. 171, 181 (1980); *Pueblo v. López Pérez*, 106 D.P.R. 584, 587 (1977).

De la lectura objetiva y sosegada que realizáramos del récord, se deprenden todos y cada uno de los elementos del delito de apropiación ilegal (Art. 165 del Código Penal, 33 L.P.R.A. sec. 4271). No vemos que exista argumento razonable alguno en el presente caso que nos obligue apartarnos de esta sabia norma de prudencia judicial. Como puede advertirse la cuestión medular tras el delito de apropiación ilegal es que el acusado se apropió ilegalmente de unos bienes que no eran suyos; independientemente de que originalmente le hubiesen sido legítimamente confiados los bienes que posteriormente se apropió. *Cf. Pueblo v. Uriel Álvarez*, 112 D.P.R. 312 (1982); *Pueblo v. Miranda Ortiz*, ante; *Código Penal Comentado*, 36 Rev. C. Abo. P.R. 1206 (1975). Sobre este aspecto existe amplia evidencia en el récord que de ser creída, como en efecto lo fue, es suficiente en derecho para sostener los veredictos condenatorios emitidos por el Jurado.

## III

Los restantes señalamientos de error —errores quinto, sexto, séptimo y octavo— versan sobre la denegación de la sentencia suspendida y el haber alegadamente condicionado su concesión al cumplimiento de la pena de restitución.

La concesión del beneficio que comprende la Ley de Sentencia Suspendida, 34 L.P.R.A. sec. 1027 y ss., por el tribunal de instancia es de naturaleza discrecional. *Pueblo v. González*

*Olivencia*, 116 D.P.R. 614, 618 (1985); *Pueblo v. Álvarez Maurás*, 100 D.P.R. 620, 624 (1972); *Pueblo v. Pérez Bernard*, 99 D.P.R. 834, 839 (1971). Sin embargo, esta discreción al imponer o conceder condiciones no puede ser ejercitada de manera arbitraria e irrazonable. *Vázquez v. Caraballo*, 114 D.P.R. 272, 275 (1983); *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964); *Pueblo v. Ortega Santiago*, 125 D.P.R. 203 (1990).

De la transcripción de evidencia de los procedimientos acaecidos durante el acto de imposición de la sentencia *no* se desprende claramente, como argumenta la apelante, que el tribunal de instancia condicionó arbitrariamente la concesión o no de la sentencia suspendida a una restitución.

Sin embargo, en vista de que el informe rendido por la oficial probatoria fue favorable a la apelante y de que ésta informa en apelación que está en disposición de efectivamente llevar a cabo la restitución del dinero perteneciente al perjudicado Román Ambert, consideramos prudente que el foro de instancia considere nuevamente esa posibilidad. Deberá celebrar una vista a esos efectos. *Vázquez v. Caraballo*, ante.

Por los fundamentos antes expresados, *se confirma la sentencia dictada en el presente caso por el Tribunal Superior de Puerto Rico, Sala de Bayamón, y se devuelve el caso a dicho foro para procedimientos ulteriores compatibles con lo aquí resuelto.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General Interino. El Juez Asociado Señor Rebollo López emitió opinión concurrente. El Juez Presidente Señor Pons Núñez no intervino.

(*Fdo.*) Heriberto Pérez Ruiz
*Secretario General Interino*

—O—

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

El presente recurso nos permite hacer unas expresiones respecto a la obligación, o no, del "Estado" de sufragar los gastos referentes a la traducción al idioma español de prueba oral o documental que se presenta en evidencia durante la celebración de un proceso criminal. En adición, nos brinda la oportunidad de expresarnos respecto a los requisitos relativos a la imposición por el tribunal, como condición para concederle a un convicto los beneficios de una sentencia suspendida, de la obligación de llevar a cabo una restitución al perjudicado. Estimamos procedente "ampliar" un poco más los pronunciamientos a esos efectos hechos por el Tribunal en la sentencia emitida.

I

El Ministerio Público radicó, ante el Tribunal Superior de Puerto Rico, Sala de Bayamón, una acusación mediante la cual le imputó a la apelante Cruz López Rosario haber violado las disposiciones del Art. 165 del vigente Código Penal de 1974 (33 L.P.R.A. sec. 4271). Dicho pliego acusatorio, en lo pertinente, lee:

> La referida acusada, Cruz López Rosario, allá en o para el día 23 de abril de 1985 y en Bayamón, Puerto Rico, que forma parte de la jurisdicción del Tribunal Superior de Puerto Rico, Sala de Bayamón, Puerto Rico, ilegal, voluntaria, maliciosa y criminal-mente, sin violencia y/o intimidación se apropió ilegalmente de bienes ajenos consistentes en la cantidad de $3,066.00 [sic], perte-neciente dicho dinero al Sr. Abraham Román Ambert. Informe del Procurador General, pág. 1.

El juicio en su fondo se celebró ante Jurado. El mismo rindió un veredicto condenatorio. A solicitud de la defensa, el caso fue referido a la consideración de la oficina de oficiales probatorios. Rendido el correspondiente informe —y luego de suceder unos incidentes en corte abierta que precisamente son objeto de señalamientos de error, los cuales reseñaremos más adelante— el

tribunal de instancia(¹) sentenció a la apelante a sufrir una pena de diez (10) años de presidio por el delito de apropiación ilegal agravada por el cual fuera convicta, *denegándole los beneficios de una sentencia suspendida.*

Días más tarde, la apelante radicó ante este Tribunal, en adición al correspondiente recurso de apelación, un recurso de hábeas corpus en el cual alegó que el tribunal de instancia había vulnerado "el derecho al debido proceso de ley al condicionar y denegar la libertad a prueba a que se cumpliese con la pena de restitución sin haberse evaluado la condición y la capacidad económica de la convicta y que era improcedente ordenar la restitución de unas cantidades que correspondían a unos casos que habían sido archivados o que no llegaron a radicarse". Alegato de la apelante, pág. 7.

Mediante Resolución de 5 de junio de 1987, luego de contar con el beneficio de una comparecencia de la Oficina del Procurador General de Puerto Rico, consolidamos el mencionado recurso de hábeas corpus con el recurso de apelación radicado, fijándole a la apelante una fianza en apelación de $10,000, *la cual ésta prestó.*

En el referido recurso de apelación, la apelante le imputa al foro de instancia la supuesta comisión de ocho (8) errores, a saber:

PRIMER ERROR:

Se vulneraron los derechos constitucionales a un juicio justo y al debido proceso de ley al denegar el Honorable Magistrado de instancia una solicitud para que se tradujeran al español unos documentos presentados en evidencia redactados en inglés que estaban relacionados con una petición ante la Corte de Quiebras y cuya comprensión era fundamental para que los miembros del jurado pudieran evaluar la totalidad de la prueba desfilada.

SEGUNDO ERROR:

Erró el Tribunal de instancia al declarar sin lugar una solicitud de absolución perentoria.

TERCER ERROR:

El veredicto fue uno no conforme a la prueba y a derecho.

_____

(¹) Hon. Jorge Busigó Cifre.

CUARTO ERROR:

Cometieron error los señores del jurado al encontrar culpable a la apelante a base de una prueba que no rebatió la presunción de inocencia ni estableció su culpabilidad más allá de toda duda razonable.

QUINTO ERROR:

Vulneró el Tribunal de instancia el derecho constitucional al debido proceso de ley al condicionar y denegar los beneficios de la libertad a prueba por no haber cumplido la apelante con la pena de restitución impuéstale.

SEXTO ERROR:

Abusó de su discreción el Tribunal de instancia al imponer una pena de restitución sin evaluar la capacidad y condición económica de la apelante para satisfacerla.

SÉPTIMO ERROR:

Constituye una violación al derecho al debido proceso de ley y a nuestro ordenamiento procesal vigente el imponer una pena de restitución por unos delitos que se desestimaron y otros que nunca se radicaron.

OCTAVO ERROR:

Incidió la Sala de instancia al negarse a diferir el cumplimiento de la pena de restitución hasta tanto la sentencia en el caso de autos adviniese final y firme, una vez culminase el trámite apelativo. Alegato de la apelante, págs. 8–9.

## II

Los referidos señalamientos de error hacen necesaria la exposición detallada de la evidencia que desfilara ante el foro de instancia.

La prueba de cargo presentada demostró que en el 1982 se creó una organización conocida como "Grupo Cristiano de Ahorro y Crédito" —compuesta por socios, con una junta de directores, y en relación con la cual la apelante fungió siempre como administradora— la cual pretendió convertirse en una cooperativa, no logrando obtener nunca la aprobación a esos efectos de la Administración de Fomento Cooperativo. Dicha asociación man-

tenía una cuenta corriente de cheques en el Banco Popular de Puerto Rico, bajo el nombre de *United Christian Association.* La situación económica de dicha asociación se deterioró malamente durante los primeros meses del año 1985, desembocando ello en la radicación, *el 6 de mayo de 1985,* de una solicitud bajo el Capítulo 11 de la Ley de Quiebras federal.

En lo que respecta al caso específico del perjudicado en el alegado caso de apropiación ilegal agravada ante nuestra consideración, la prueba demostró que el Sr. Abraham Román Ambert se hizo "socio" de la organización durante el año 1984, adquiriendo originalmente "acciones" en la misma por valor de $15, comprando posteriormente $20 adicionales en "acciones". El señor Román Ambert, *a principios del mes de abril de 1985,* visitó las oficinas de la referida organización con el propósito de obtener un préstamo de $9,000 de la misma. *Allí se entrevistó con la apelante López Rosario.* Esta le informó que para lograr la obtención de dicho préstamo, *tenía que adquirir* "acciones" adicionales por valor de $3,000. A esos efectos, el perjudicado Román Ambert solicitó y obtuvo un préstamo del Banco Central, sucursal de Manatí, por la suma de $3,031.07. Dicho banco expidió un cheque, a favor del perjudicado, por la suma antes mencionada el día 19 de abril de 1985. Dos (2) días más tarde, esto es, *el 21 de abril de 1985,* el señor Román Ambert *le entregó personalmente dicho cheque a la apelante López Rosario.* Este cheque fue depositado, y cobrado, *el 22 de abril de 1985* en el Bayamón Federal Savings, sucursal de Levittown, *en una cuenta de una entidad de nombre "Puerto Rico Father & Sons, Inc.",* esto es, *en una cuenta bancaria distinta y separada de la cuenta que mantenía en el Banco Popular de Puerto Rico el Grupo Cristiano de Ahorro y Crédito.* En relación con ello, procede que se enfatice el hecho de que en relación con esta segunda cuenta bancaria del Bayamón Federal Savings *las personas autorizadas a firmar, y retirar fondos, de dicha cuenta lo eran la apelante Cruz López Rosario y una persona de nombre Alberto López Rosario.* Procede que se señale, por último, que al perjudicado Román Ambert nunca le fue

concedido el préstamo que él solicitara del Grupo Cristiano de Ahorro y Préstamo.

Por su parte, la defensa presentó, como única prueba, la petición que hiciera el Grupo Cristiano de Ahorro y Crédito ante la Corte de Quiebras y la "minuta" de la reunión de la junta de directores de dicha asociación autorizando la radicación de dicha petición. Ambos documentos estaban redactados en inglés.

## III

Mediante los señalamientos de error segundo, tercero y cuarto, la apelante cuestiona la suficiencia en derecho de la prueba presentada por el Ministerio Fiscal. Argumenta que la misma no es jurídicamente suficiente para sostener el veredicto condenatorio rendido por el Jurado por el delito de apropiación ilegal agravada. No tiene razón.

El Art. 165 del Código Penal de 1974, *supra*, dispone que:

> Toda persona que ilegalmente se apropiare sin violencia ni intimidación de bienes muebles, pertenecientes a otra persona, será sancionada con pena de reclusión por un témino que no excederá de seis meses, multa que no excederá de quinientos (500) dólares, pena de restitución, o cualquier combinación de éstas a discreción del tribunal.

El Art. 166 del Código Penal de 1974, según enmendado, 33 L.P.R.A. sec. 4272, dispone en lo pertinente que:

> Será sancionada con pena de reclusión por un término fijo de diez (10) años, toda persona que cometiere el delito previsto en la sección 4271 de este título con la concurrencia de cualquiera de las siguientes circunstancias:
>
> . . . . . . . .
>
> (b) *Apropiándose de bienes cuyo valor fuere de doscientos dólares o más;*
>
> . . . . . . . .
>
> En cualquiera de las circunstancias anteriores, de mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de doce (12) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años. *El*

*tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida o ambas penas.* (Énfasis suplido.)

En *Pueblo v. Uriel Álvarez,* 112 D.P.R. 312, 315–316 (1982), expresamos, en lo pertinente, que:

El texto vigente del Art. 165 tiene su origen *y aglutina en una fórmula* los Arts. 426, 429, 432–437, 440–443, 444a, 445–455, 468, 470, 470a, 473, 475, 510 (33 L.P.R.A. secs. 1681, 1684, 1687–1692, 1695–1698, 1700, 1721–1731, 1813, 1815, 1816, 1819, 1821 y 2035) del Código Penal derogado los cuales individualmente tipificaban los delitos de hurto, hurto de energías, hurto de uso, hurto de cosa perdida, *abuso de confianza* y falsa representación. *Además cubre los delitos que jurisprudencialmente se conocían como hurto mediante treta y engaño y estafa.* Se aparta así de la técnica de la exposición casuística. Tres razones movieron a sus redactores a esta consolidación: (1) eliminar la confusión que traía la diversificación de tantos elementos en esos artículos, *en vista de que lo esencial era probar si la persona se había apropiado ilegalmente de bienes ajenos*; (2) tratar científicamente una conducta similar entre delitos igualmente nociva; y (3) evitar y superar dificultades procesales perjudiciales a la eficaz administración de la justicia, que surgían de las limitaciones —y a veces confusos conceptos— entre los delitos tradicionales contrapuestos al denominador común delictivo de una misma conducta penada por distintos delitos que sólo permitía una acusación. (Énfasis suplido.)

Es por ello que, como correctamente señala el Procurador General en el alegato que radicara en el presente caso, el elemento esencial o indispensable del delito en controversia es que el imputado ilegalmente se apropie, o advenga en posesión ilegal, de bienes pertenecientes a otro. Véanse: *Pueblo v. Miranda Ortiz,* 117 D.P.R. 188 (1986); *Pueblo v. Uriel Álvarez,* supra, pág. 318; *Pueblo v. Padró Ríos,* 105 D.P.R. 713 (1977); *Pueblo v. Rodríguez Vallejo,* 100 D.P.R. 426, 432 (1972).

Por otro lado, debe mantenerse presente que el término "apropiarse" incluye el malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse, o en cualquier forma hacer propio cualquier bien o cosa en forma temporal o permanente. Véanse: Art. 7(5) del Código Penal de 1974 (33 L.P.R.A. sec.

3022(5)); *Pueblo v. Miranda Ortiz*, supra; *Pueblo v. Uriel Álvarez*, supra, pág. 317; *Pueblo v. Padró Ríos*, supra, pág. 716.

La prueba de cargo presentada demuestra, más allá de duda razonable, una conducta de parte de la apelante de la cual el juzgador de los hechos podía *razonablemente inferir* que ésta se apropió ilegalmente —*mediante "treta y engaño, abuso de confianza o malversación de bienes"*— de los $3,031.07 que el perjudicado Román Albert le entregó con el propósito de comprar "acciones" en la asociación conocida como "Grupo Cristiano de Ahorro y Crédito". La apelante, como administradora de la organización, tenía la obligación de utilizar los fondos que le fueron entregados *para el propósito para el cual los había recibido,* esto es, la compra de acciones del mencionado Grupo Cristiano de Ahorro y Crédito. Así no lo hizo. Por el contrario, dichos fondos fueron depositados en la cuenta bancaria de *otra* entidad sobre la cual la apelante tenía el control. Ello, no hay duda, constituía bajo el derogado Código Penal el delito de abuso de confianza,[2] el cual es castigado hoy día al amparo de las disposiciones del antes citado Art. 165 del vigente Código Penal; esto es, el delito de apropiación ilegal. Debe mantenerse presente que la evidencia circunstancial es intrínsecamente igual que la evidencia directa. *Pueblo v. Salgado Velázquez*, 93 D.P.R. 380, 383 (1966).

## IV

Mediante el primer señalamiento de error, cuestiona la apelante la negativa del tribunal de instancia de traducir al idioma español los dos (2) documentos presentados en evidencia por la defensa, los cuales estaban redactados en inglés, relacionados los mismos con la petición de quiebra que hiciera el Grupo Cristiano de Ahorro y Crédito. Alega que la negativa del juez sentenciador a así hacerlo —fundada en que en Puerto Rico todo el mundo entiende el idioma inglés— vulneró su derecho a un juicio justo e

---

(2)  Art. 445 del antiguo Código Penal, 33 L.P.R.A. ant. sec. 1721.

imparcial. En apoyo de su planteamiento cita nuestra decisión en *Pueblo v. Tribunal Superior*, 92 D.P.R. 596 (1965), interpretativa de la Ley de Idioma del 1902 (1 L.P.R.A. sec. 51 *et seq.*). Independientemente de la validez del fundamento aducido por el tribunal de instancia, *no* se cometió el error señalado.

En el citado caso de *Pueblo v. Tribunal Superior* —caso en que el tribunal de instancia rechazó la solicitud de un abogado, que representaba una corporación acusada de una violación a la Ley de Corporaciones, de que se llevaran a cabo los procedimientos en el idioma inglés por razón de él no dominar el español— expresamos, a la pág. 606, que:

> En lo que concierne a los trámites judiciales en los tribunales, la ley de 21 de febrero de 1902, al disponer que "se emplearán indistintamente los idiomas inglés y español" sólo puede tener alcance directivo, cf. *RCA Communications v. Registrador*, 79 D.P.R. 77 (1956) *y no confiere un derecho de opción, ni al acusado ni a su abogado, para elegir el idioma en que se deba ventilar el proceso.* Corresponde a los jueces, no a los abogados, la dirección de los procedimientos en el tribunal y la adopción de medidas que garanticen un juicio justo a los acusados. *Siendo el español el idioma de los puertorriqueños, los procedimientos judiciales en nuestros tribunales deben seguirse en español,* pero los jueces tomarán aquellas medidas que resulten necesarias para que, *en protección de los derechos de cualquier acusado que no conozca suficientemente nuestro idioma,* se mantenga a éste —y desde luego a su abogado por ser ello parte de su derecho a una defensa efectiva— informado, por medio de traductores o de otro modo eficaz, de todo lo que transcurra en el proceso, y para que así lo revele el r[é]cord. (Énfasis suplido.)

*En lo pertinente al caso ante nuestra consideración,* ello significa que si *"el Estado"* intenta presentar en evidencia prueba documental redactada en idioma distinto al español, éste viene en la obligación, *a su costo,* de traducir fielmente dicha prueba documental al idioma español. Independientemente de lo resuelto en *Pueblo v. Tribunal Superior,* supra, lo anteriormente expresado es consecuencia directa, por imperativo del debido procedimiento de ley, del derecho de todo acusado a entender —para poder refutarla y defenderse adecuadamente— la prueba que el

Estado presenta en su contra. *Pueblo v. Moreno González*, 115 D.P.R. 298 (1984). Igual razonamiento, naturalmente, es aplicable en casos de prueba oral.

Lo resuelto por este Tribunal en el citado caso de *Pueblo v. Tribunal Superior*, supra, sin embargo, *no constituye autoridad para sostener que los tribunales de justicia en nuestra jurisdicción —ni el Estado— vienen en la obligación en un proceso criminal de traducir al idioma español evidencia documental, u oral, que es presentada por un acusado que tiene medios económicos suficientes para procurar él mismo la traducción deseada.* El debido procedimiento de ley y el derecho a un juicio justo e imparcial quedan garantizados cuando el tribunal brinda la oportunidad, permite la presentación, y admite, en evidencia toda aquella *prueba pertinente*, oral o documental, que tiene a bien presentar un acusado durante el proceso que se le celebra. *Al igual que en la situación relativa a la asistencia de abogado*, el tribunal, sin embargo, no está en la obligación de procurar —y sufragar los gastos de— una traducción de esa prueba *en situaciones en que el imputado cuenta con medios suficientes para costear los mismos*.

La apelante en el presente caso fue representada por un *abogado particular* dedicado a la práctica privada de la profesión *y no demostró* ante el tribunal de instancia que careciera de los medios económicos, o de otra índole, para lograr que se llevara a efecto la traducción en controversia. En palabras sencillas, esa era una situación que le competía resolver a la apelante, y no al tribunal, con anterioridad al momento en que presentó en evidencia la prueba documental en controversia.

## V

Mediante los señalamientos quinto, sexto, séptimo y octavo, sostiene la apelante que el tribunal de instancia erró al condicionar y denegar los beneficios de la libertad a prueba al no cumplimiento por ella de la condición de restitución "impuéstale"; por haberlo así "dispuesto" sin evaluar la capacidad y condición

económica de la apelante; al no "diferir" el pago de la restitución ordenada, y al "imponerle", como restitución, el pago de unos dineros supuestamente apropiados por la apelante en relación con casos criminales que habían sido desestimados.

Los anteriores señalamientos de error tienen su origen en los siguientes hechos y acontecimientos: conforme surge de los autos del caso, en el informe que rindiera el oficial probatorio, éste recomendó que se impusiera *como condición* de la probatoria a la apelante la restitución, al perjudicado Román Ambert, del dinero que éste le había entregado a aquélla, esto es, los $3,031.07. Conforme la Minuta del día 8 de mayo de 1987, el tribunal de instancia, al suspender el acto de dictar sentencia para el día 28 de mayo le recomendó a la defensa que se reuniera con el representante del Ministerio Público respecto al asunto de restitución del dinero por cuanto "no había probatoria si no paga".

*Ese día 28 de mayo de 1987* —conforme surge de una transcripción de evidencia que obra en autos, luego de que la defensa hiciera constar para récord que el informe del oficial probatorio contenía una recomendación de probatoria condicionada a la restitución del dinero al perjudicado Román Ambert y que dicho informe adolecía de datos respecto a la capacidad económica de la apelante para llevar a cabo la mencionada restitución— *sucedió lo siguiente*:

> Honorable Juez: Bien, no existiendo impedimento legal de clase alguna el Tribunal le impone a Doña Cruz López Rosario, en el caso G86-975 —diez (10) años de reclusión. En este caso según señala el Compañero no se ha efectuado una restitución, no solamente se trata de una restitución al perjudicado en este caso, que es el Señor Abraham Román Ambert, esta señora según los hechos del caso organizó una cooperativa y defraudó a unos miembros de una cooperativa y de una iglesia que ella había organizado; *la forma y manera que esta señora venía operando en la comunidad y precisamente en la iglesia este Tribunal entiende que no merece tener el beneficio de una sentencia suspendida* y ordena el ingreso en una institución penal a cumplir la pena de diez (10) años impuesta por el Tribunal.

Lic. Moisés Abréu: Vuestro Honor, entendemos que, con el mayor respeto que en el caso ante su consideración sólo estuvo, eh, planteada la situación de una alegada apropiación . . .

Honorable Juez: Eso es así Compañero pero este caso el Compañero sabe que se le archivaron otros casos . . .

Lic. Moisés Abréu: . . ."unjum". . .

Honorable Juez: . . . donde el modo de operar esta señora era similar y el Tribunal entiende que si no se efectúa la restitución en la forma y manera que ella venía operando no le vamos a conceder el beneficio de una sentencia suspendida.

Lic. Moisés Abréu: *Para estar claro Vuestro Honor debemos entender que su Señoría al imponer esta sentencia ha tomado en consideración los casos que fueron archivados y que es la posición del Honorable Tribunal que nuestra representada no sólo debe restituir la suma por el cual se le juzgó sino también las sumas envueltas en los casos por los cuales fueron archivados.*

Honorable Juez: *El Tribunal entiende que no habiéndose efectuado la restitución de este caso y las circunstancias que rodean el mismo el Tribunal no considera que ella es merecedora de una sentencia suspendida.*

Lic. Moisés Abréu: Vuestro Honor, nosotros tendríamos la súplica al Tribunal, *que se nos conceda el término de treinta (30) días para hacer dicha restitución* ya que nuestra representada según hemos estado dialogando con ella no tiene la capacidad económica en estos momentos para satisfacer la suma que entendemos que es de $3,031.00 y apelamos a la sana discreción de este Honorable Tribunal se nos conceda dicho término de treinta días para efectuar dicho pago.

Honorable Juez: *SIN LUGAR*, Compañero. Marshal deberá ingresar en la institución penal. (Énfasis suplido.) T.E., págs. 4–8.

De una lectura de lo anteriormente expuesto surge que *no es enteramente correcto lo "aseverado"* por la apelante en los señalamientos de error quinto, sexto, séptimo y octavo. Ello así por cuanto —si bien es cierto que el juez de instancia expresó que no estaba en disposición de concederle la probatoria a la apelante a menos que ésta estuviera en disposición de restituirle el dinero al perjudicado Román Ambert y que el referido magistrado aparentemente tomó en consideración, respecto a la concesión o no de la probatoria, otros alegados casos similares en que la

apelante había sido originalmente acusada pero que posteriormente habían sido desestimados— el juez sentenciador *nunca impuso formalmente* como condición para conceder la probatoria, o como condición para poder seguir disfrutando de dicha probatoria una vez concedida la misma, el pago de dinero alguno por la apelante. *Ello, sin embargo, necesariamente no significa que su actuación fuera una correcta en derecho.*

En lo referente a la concesión, o no, por los tribunales de instancia de los beneficios de sentencias suspendidas a los convictos de delito, luego de resumir las guías generales que rigen dicha situación,(3) en *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 216–217 (1990), expresamos en lo pertinente al asunto ante nuestra consideración que:

> Discreción, naturalmente, significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. En el ámbito judicial, sin embargo, el mencionado concepto "no significa poder para actuar en una forma u otra, *haciendo abstracción* del resto del Derecho . . .". (Énfasis suplido.) *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964).
>
> No resulta fácil precisar cuándo un tribunal de justicia incurre en un abuso de discreción. No tenemos duda, sin embargo, *de que el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad.* Como expresáramos en *Pueblo v. Sánchez González*, ante, pág. 200, "[d]iscreción es, pues, una *forma de razonabilidad aplicada al*

---

(3) ". . . hemos resuelto que la decisión o determinación de conceder o no los beneficios de una sentencia suspendida a un convicto de delito que prima facie cualifica para recibir dichos beneficios *descansa en la sana discreción* del tribunal sentenciador, *Vázquez v. Caraballo*, 114 D.P.R. 272 (1983); que a dicha determinación le cobija la presunción de ser una justa y correcta, *Pueblo v. Pérez Bernard*, 99 D.P.R. 834 (1971); que el informe que rinde al tribunal el oficial probatorio, y su recomendación sobre la concesión o no de una sentencia suspendida al convicto, *no* obliga al juez sentenciador, *Pueblo v. Martínez Rivera*, 99 D.P.R. 568 (1971); que aun cuando la carencia de antecedentes penales es una circunstancia favorable para el convicto que aspira a recibir los beneficios de una sentencia suspendida, dicha circunstancia, por sí sola, no es suficiente para recibir dichos beneficios, *Pueblo v. Luciano*, 77 D.P.R. 597 (1954), y que, en casos de alegaciones de culpabilidad, no hay nada que impida que el juez de instancia examine el expediente fiscal con el propósito de conocer los hechos que dieron lugar a la radicación de los cargos criminales y así poder estar en mejor posición de ejercer esa discreción, *Pueblo v. Feliciano*, 67 D.P.R. 247 (1947)." *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 210–211 (1990).

*discernimiento judicial* para llegar a una conclusión justiciera
. . .". (Énfasis suplido.)

Ya en cuanto al asunto específico de *la restitución*, debemos mantener presente que conforme las disposiciones pertinentes y vigentes de nuestro ordenamiento jurídico, la misma puede ser impuesta por un tribunal *como condición* para la concesión de una sentencia suspendida o probatoria(4) o bien *como una de las penas* disponibles para castigar un delito, la cual puede ser impuesta por sí misma o en adición a alguna otra de las penas establecidas.(5)

Estando el "adecuado ejercicio de la discreción . . . inexorable e indefectiblemente atado al concepto de la razonabilidad", (énfasis suprimido) *Pueblo v. Ortega Santiago*, supra, pág. 211, esto es, no pudiendo ser la determinación sobre concesión, o no, de una sentencia suspendida una arbitraria, *no hay duda que la imposición de la restitución como condición de la concesión de una sentencia suspendida tiene que forzosamente depender de la capacidad económica del convicto para llevar a cabo la misma.* Véase *Vázquez v. Caraballo*, 114 D.P.R. 272, 278 (1983). *Ello necesariamente requiere que el tribunal sentenciador esté adecuadamente informado sobre la capacidad o condición económica del convicto del delito antes de hacer la determinación sobre si impone, o no, la restitución como condición y la cuantía de la misma. De ordinario, ello requiere la celebración de una vista.* Como hemos visto, esa no fue la situación en el presente caso.

En vista de que el informe presentencia rendido por la oficina de oficiales probatorios fue uno favorable a la apelante y de que el foro de instancia aparentemente consideró la posibilidad de concederle una sentencia suspendida a ésta siempre que ella estuviera en disposición de restituirle el dinero al perjudicado

---

(4) Véase Art. 2 de la Ley de Sentencia Suspendida, 34 L.P.R.A. sec. 1031.

(5) Véanse: Art. 49A del vigente Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3212; Art. 165 del referido Código Penal, 33 L.P.R.A. sec. 4271.

Román Ambert,(6) somos del criterio que, luego de remitido el mandato, el foro de instancia(7) *debe considerar nuevamente* la posibilidad de concederle una probatoria a la apelante sujeto a que ésta restituya la totalidad del dinero, o parte del mismo, que fuera por ella ilegalmente apropiado del perjudicado Román Ambert. Para ello, conforme expresáramos anteriormente, *el foro de instancia deberá celebrar una vista para determinar la capacidad económica de la apelante para llevar a cabo la restitución.* Igualmente *debe considerar* el tribunal de instancia *la opción* de "sentencia fraccionada" que le provee la decisión emitida recientemente por este Tribunal en *Pueblo v. Vega Vélez*, 125 D.P.R. 188 (1990).

Por los fundamentos antes mencionados, es que concurrimos en la sentencia emitida por el Tribunal en el presente caso.

---

(6) Naturalmente, únicamente procede que se considere en la vista que a esos efectos se celebre, la capacidad económica de la apelante para restituir la suma de dinero corrrespondiente al caso del señor Román Ambert.

(7) Estamos conscientes del hecho que el juez sentenciador, Hon. Jorge Busigó Cifre, se acogió recientemente a los beneficios de una jubilación. El Juez Administrador del Centro Judicial de Bayamón deberá tomar las medidas necesarias para que el caso sea atendido prontamente por otro magistrado de dicho Centro Judicial.