# 2002 DTA 93

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VII DE CAROLINA Y FAJARDO**

EL PUEBLO DE PUERTO RICO
Apelado

v.

EDWIN SILVA RIVERA
Acusado-Apelante

Núm. KLAN-01-00300

San Juan, Puerto Rico, a 25 de abril de 2002

Panel integrado por su Presidente, el Juez Miranda de Hostos,
la Juez Hernández Torres y el Juez Martínez Torres

Martínez Torres, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El acusado-apelante, Edwin Silva Rivera, solicita que revoquemos una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Carolina (Hon. Lilia Ortiz Puig, Juez), en la que se le declaró culpable de los delitos de apropiación ilegal agravada, falsificación de documentos y posesión y traspaso de documentos falsificados. Por los fundamentos que expondremos a continuación, se confirma la sentencia apelada.

## I

El 3 de octubre de 2000, el Tribunal de Primera Instancia, Sala Superior de Carolina, declaró culpable por tribunal de derecho a Silva Rivera de haber cometido los delitos de apropiación ilegal agravada, █ falsificación de documentos █ y posesión y traspaso de documentos falsificados. █ El 27 de marzo de 2001, el tribunal dictó sentencia condenando a Silva Rivera a seis años de cárcel por cada uno de los delitos imputados. Se estableció que las penas se cumplirían en forma concurrente. Además, se le impuso a Silva Rivera una pena de restitución por la cantidad de $9,600.00 a favor del señor Rafael Alvarez Lombana. También se estableció al momento de dictarse la sentencia que el acusado-apelante, Silva Rivera, debía consignar en el tribunal los días quince de cada mes la cantidad de $500.00 a favor del señor Alvarez Lombana. Conforme a la recomendación del informe presentencia, se le concedieron a Silva Rivera los beneficios de una sentencia suspendida.

No conforme con lo resuelto por el Tribunal de Primera Instancia, Silva Rivera acudió oportunamente ante nos mediante recurso de apelación. En síntesis, alega que erró el tribunal al aceptar una determinación de causa probable para acusar en alzada, cuando en la resolución en la que se encontró causa no se informó cuáles eran los delitos imputados. En segundo lugar, alega que erró el tribunal al no desestimar conforme a la Regla 64(p) de Procedimiento Criminal, 32 L.P.R.A. Ap. II, ya que alegadamente no se presentó prueba que señalara los elementos de los delitos imputados. Como tercer, cuarto y quinto error, Silva Rivera argumenta que incidió el tribunal al determinar que se configuraron los delitos de apropiación ilegal agravada, falsificación de documentos y posesión y traspaso de documentos falsificados. En último lugar, se alega que erró el Tribunal de

132

Primera Instancia al no admitir en evidencia ciertos cheques y las planillas de contribución sobre ingresos del acusado-apelante, Silva Rivera.

Contando con el beneficio de los alegatos de las partes, la transcripción de la prueba a modo de exposición narrativa estipulada y los autos originales del caso, resolvemos.

**II**

El juicio en su fondo se realizó los días 2 y 3 de octubre de 2000. Los testigos de cargo lo fueron el señor Ramón Alvarez Lombana, el señor Félix A. García Arroyo y el Agente José Luis Torres Ramírez. Los testigos de defensa lo fueron el señor Wilson Alvarez y el propio acusado-apelante, Silva Rivera.

De acuerdo al testimonio ofrecido por el señor Alvarez Lombana, éste conoció en su casa al acusado-apelante, Silva Rivera en la primera semana de julio del año 1999. **E.N.P., pág. 20.** Testificó que su hijo, Wilson Alvarez, era amigo de Silva Rivera por lo que se lo presentó. **E.N.P., pág. 20.** De acuerdo a Alvarez Lombana, Silva Rivera necesitaba un dinero para comprar unas plantas eléctricas. **E.N.P., pág. 21.** Alvarez Lombana le dio a Silva Rivera la cantidad de $9,600.00 *"cash"* en las manos. **E.N.P., pág. 24.** Se los dio para que comprara los equipos. **E.N.P., pág. 24.**

Continuó testificando el señor Alvarez Lombana que Silva Rivera quedó con él en liquidarle en *"lo mínimo de un mes"* y que le *"iba a regalar $500.00... de la ganancia que él iba a obtener de los equipos de plantas eléctricas"*. **E.N.P., pág. 24.** Testificó que le dio ese dinero a Silva Rivera *"en calidad de ayudar, específicamente, y en la promesa que me iba a regalar quinientos dólares, que es bueno"*. **E.N.P., pág. 24.**

En la primera semana de julio, Silva Rivera le entregó a Alvarez Lombana un cheque para ser cambiado en agosto nueve. **E.N.P., pág. 28.** El cheque fue preparado por Silva Rivera. **E.N.P., pág. 29.** El señor Alvarez Lombana también testificó que Silva Rivera firmó el cheque frente a él. **E.N.P., pág. 30.** Al cheque no se le puso fecha porque *"él mismo me pidió una semana, ya que el ocho-uno [1 de agosto de 1999] era domingo o lunes, y que le diera dos o tres días para él hacer las gestiones de cambiar el certificado* ■ *y pagarme en `cash´, de la misma forma que yo le di [sic] el dinero al caballero"*. **E.N.P., pág. 30.**

Alvarez Lombana fue quien escribió en el cheque ocho-nueve del noventa y nueve. **E.N.P., pág. 31.** Posteriormente, el hijo de Alvarez Lombana hizo las gestiones pertinentes con Silva Rivera para la devolución del dinero. *"No lo vio nunca, nunca dio cara, ni en la oficina ni en la calle"*. **E.N.P., pág. 31.** El 1 de septiembre de 1999, Alvarez Lombana depositó el cheque. **E.N.P., pág. 33.** El cheque fue devuelto por razón de que la cuenta estaba cerrada. **E.N.P., págs. 31 y 33.** Posteriormente, el hijo de Alvarez Lombana trató de localizar a Silva Rivera. **E.N.P., pág. 34.** Acudió al Cuerpo de Investigaciones Criminales (C.I.C) y a Fiscalía. **E.N.P., pág. 34.** El C.I.C. redactó una carta y Alvarez Lombana la envió y firmó con el propósito de cobrar su dinero. **E.N.P., págs. 35 y 36.** Se envió a la dirección del trabajo y de la casa de Silva Rivera. **E.N.P., pág. 36.** No hubo contestación ninguna. **E.N.P., pág. 38.**

En el contrainterrogatorio, el señor Alvarez Lombana testificó que Silva Rivera le dio el cheque en garantía de que iba a cobrar su dinero. **E.N.P, pág. 46.** El señor Alvarez Lombana también testificó que desconocía que la cuenta del cheque estaba cerrada. **E.N.P., pág. 46.**

En segundo lugar, testificó el señor Félix A. García Arroyo. Testificó que es un oficial pensionado del Banco Popular (**E.N.P., pág. 80**) y que trabajó en el área de sistema de cheques. **E.N.P., pág. 81.** Con relación al cheque en cuestión, testificó que *"fue devuelto por motivo de cuenta cerrada"*. **E.N.P., pág. 84.** Testificó además que la cuenta número 030-257395, a nombre de Edwin Silva Rivera, fue abierta el 21 de febrero de 1997 y que la misma fue cerrada el 24 de marzo de 1998. **E.N.P., pág. 86.** Testificó que cualquier cheque que llegue de una cuenta cerrada no se procesa, se devuelve por inexistente. Para el banco, ese cheque no tiene

validez. **E.N.P., pág. 89.**

Como parte del contrainterrogatorio, el señor García Arroyo testificó que el cheque en controversia tiene fecha de ocho-nueve del noventa y nueve (9 de agosto de 1999) y que fue depositado para su cobro el nueve-uno del noventa y nueve (1 de septiembre de 1999). **E.N.P., pág. 99.** El cheque fue devuelto el 2 de septiembre de 1999.

El tercer testigo lo fue el Agente del C.I.C., José Luis Torres Ramírez. Testificó, entre otras cosas, que investigó el caso que nos ocupa y que recibió la querella en septiembre de 1999. **E.N.P., pág. 99.** Hizo un *"subpoena"* al banco para conseguir toda la información sobre la cuenta. **E.N.P., pág. 100.**

El primer testigo de la defensa lo fue Wilson Alvarez, hijo del señor Alvarez Lombana. Testificó que conoce al acusado-apelante, Silva Rivera, de la compañía I.B.F. **E.N.P., pág. 120.** Testificó el señor Alvarez que él es un comerciante (**E.N.P., pág. 121**) y que su papá (Alvarez Lombana) se dedica a cambiar cheques. **E. N.P., pág. 121.** Dijo también que Silva Rivera y él hicieron negocios en el pasado. **E.N.P., pág. 122.** Testificó que presentó a Silva Rivera con su papá, para que éste le prestara *"ese dinero al señor Edwin Silva por el plazo de un mes, en lo que él podía cobrar su certificado"*. **E.N.P., pág. 128.** Los presentó *"en verano"* en la casa de su papá. E.N.P., pág. 129.

La transacción de los $9,600.00 ocurrió en presencia de Wilson Alvarez. **E.N.P., pág. 130.** El préstamo se hizo para pagarse en un mes en su totalidad. **E.N.P., pág. 130.** Silva Rivera le entregó el cheque a Alvarez Lombana el mismo día que éste le prestó el dinero. **E.N.P., pág. 131.** Entendió que Silva Rivera era una persona seria que cumpliría después con su señor padre. **E.N.P., pág. 131.** Cuando se depositó el cheque se enteró que la cuenta estaba cerrada. **E.N.P., pág. 131.** En el redirecto, testificó que vio cuando Silva Rivera hizo el cheque y lo firmó. **E.N.P., pág. 133.**

Por último, testificó el acusado-apelante, Silva Rivera, luego de instruirsele sobre su derecho a no declarar. **E.N.P., págs. 143-145.** Testificó que es vendedor de impresos y promociones por dieciséis años en IBF Business Products. **E.N.P., pág. 145.** Testificó que conoce a Ramón Alvarez Lombana porque Wilson Alvarez se lo refirió, ya que *"presta en cantidades más grandes"*. **E.N.P., pág. 146.** Testificó además que nunca ha estado en la casa de Alvarez Lombana y que nunca ha visto una planta eléctrica. **E.N.P., pág. 147.** Los señores Alvarez fueron quienes le compraron a alguien referido por él una planta eléctrica porque *"estaban a buen precio"*. **E.N.P., pág. 147.**

Posteriormente, el testigo aceptó haberle tomado un préstamo a Alvarez Lombana en el mes de mayo por la cantidad de $6,000.00 *"a tres meses"*, *"para pagar mil doscientos en junio, julio y agosto en intereses al veinte por ciento"*. **E.N.P., pág. 147.** Posteriormente, Silva Rivera testificó lo siguiente:

*"Le dije a Wilson que iba a coger una comisión grande, para poder pagar el préstamo. Y le dije que en tres meses debía estar la orden ya terminada y de más [sic]. Por eso es que se hace el cheque sin la fecha abierta, porque era para tres meses, con el cómputo de veinte por ciento, mil doscientos por mes, o seis mil más tres mil seiscientos, nueve mil dólares."*

[**E.N.P., pág. 151**].

Testificó además que al momento de pagar no contaba con el dinero por lo que le pidió a Wilson Alvarez que hablara con su papá (Alvarez Lombana) y le pidiera una oportunidad, un plan de pago o algo. **E.N.P., pág. 153.**

En el contrainterrogatorio, Silva Rivera identificó el cheque y testificó que se lo entregó al señor Alvarez

Lombana. **E.N.P., pág. 158**. Admitió que dio el cheque en garantía de los $9,600.00 y que la firma que aparece en el cheque es la de él. **E.N.P., pág. 158**. Testificó que al momento de hacer el cheque la cuenta estaba cerrada, pero que Alvarez Lombana lo sabía porque en varias ocasiones habían hecho lo mismo. **E.N.P., pág. 158**.

A preguntas del tribunal, testificó que antes de cerrar la cuenta pagaba con cheques y que luego de cerrada, pagaba con giros, *"porque ellos sabían que no tenía dinero."* Tenía que pagar en *"cash"* o giros. **E.N.P., pág. 159**.

Además de la prueba testifical antes señalada, el tribunal admitió como exhibits los siguientes documentos: cheque núm. 0177 del Banco Popular, pagadero a Ramón Alvarez Lombana por la cantidad de $9,600.00 (Exhibit 1); carta del 7 de septiembre de 1999 dirigida al acusado-apelante, Edwin Silva, por parte del señor Alvarez Lombana (Exhibit 2a); y recibos del correo certificado (Exhibits 2b a 2g del Ministerio Público). Por parte de la defensa, se marcaron como identificación dos copias de giros postales pagaderos a *"Rafael Alvarez"* (Identificaciones 1 y 2); dos copias de las planillas de contribución sobre ingresos 1998 y 1999 de Edwin Silva Rivera (Identificaciones 4 y 5), y el Informe de Delito Tipo I rendido por la policía (Exhibit 2, defensa).

### III

El primer señalamiento del acusado-apelante, Silva Rivera, es que alegadamente erró el Tribunal de Primera Instancia al aceptar una determinación de causa probable para acusar en alzada, cuando en la resolución en la que se encontró causa no se informaban los delitos imputados al acusado, y al decir que el error se subsanó con posterioridad a la lectura de acusación por el propio juez que presidió la vista preliminar en alzada.

De los autos originales del caso se desprende que en la resolución de vista preliminar en alzada, Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, sí se encuentran identificados los delitos por los cuales se encontró causa probable para acusar al acusado-apelante, Silva Rivera, entiéndase violaciones a los Artículos 166, 271 y 272 del Código Penal, *supra*, secs. 4272, 4591 y 4592, respectivamente. Autos originales, Caso Criminal Núm. FPD00G0103, pág. 2. La resolución aparece firmada el 14 de febrero de 2000 por el Hon. Angel D. Ramírez Ramírez, Juez. La determinación de causa probable realizada al amparo de la Regla 23, *supra*, goza de una presunción de corrección, regularidad y validez. *Pueblo v. Torres, Esparra*, 132 D.P.R. 77 (1992); *Pueblo v. Tribunal Superior*, 104 D.P.R. 454, 459-460 (1975).

En segundo lugar, la defensa alega ante nos que erró el Tribunal de Primera Instancia al declarar sin lugar una solicitud de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*, *"ya que no se presentó ninguna prueba"* que señalara la comisión de los elementos necesarios de los delitos imputados. Escrito de Apelación, pág. 8.

El propio acusado-apelante, Silva Rivera, expone ante nos que la prueba desfilada en la etapa de vista preliminar en alzada, fue, en términos generales, la misma que se presentó en el juicio. Escrito de Apelación, pág. 9. Por cierto, en el propio juicio la defensa del acusado-apelante presentó dos peticiones de absolución perentoria en las que se alegó que no se presentó prueba sobre los delitos imputados. Véase E.N.P., págs. 115-117 y 139-140. Sin embargo, el tribunal declaró sin lugar dichas peticiones. E.N.P., págs. 117 y 143. Es sabido que el Ministerio Fiscal sólo tiene que presentar una *scintilla* de evidencia en apoyo de los hechos imputados para derrotar una moción de absolución perentoria. Ernesto L. Chiesa Aponte, *Derecho Procesal Penal de Estados Unidos y Puerto Rico,* Ed. Forum, 1ra. ed., 1993, T. III, pág. 417. Ante ese tipo de moción, el juez tendrá que estimar si hay evidencia que, de ser creída por un jurado razonable, establece la culpabilidad del acusado. ■ *Id.*, a la pág. 418. Es por esa razón que entendemos improcedente el segundo error señalado, ya que en el propio juicio plenario no tan sólo se declararon sin lugar las peticiones de absolución perentoria, sino que también se encontró culpable al acusado-apelante, Silva Rivera, de los delitos imputados. Evidentemente, entonces no podemos estar de acuerdo con el acusado-apelante cuando dice que *"no hubo ninguna prueba"* que

demostrara los elementos de los delitos imputados. ¿Qué mejor causa probable que la convicción tras un juicio?.

## IV

El Artículo 165 del Código Penal, *supra*, sec. 4271, establece que "*toda persona que ilegalmente se apropiare sin violencia ni intimidación de bienes muebles, pertenecientes a otra persona, será sancionada con pena de reclusión por un término que no excederá de seis meses, multa que no excederá de quinientos (500) dólares, pena de restitución, o cualquier combinación de éstas a discreción del tribunal*". Por su parte, el delito de apropiación ilegal agravada puede configurarse de distintas maneras, entre ellas, cuando la persona se apropia de bienes cuyo valor fuere de doscientos (200) dólares o más. En esos casos, la persona será sancionada con pena de reclusión por un término fijo de diez (10) años. De mediar circunstancias agravantes, la pena puede ser de hasta doce (12) años y de mediar circunstancias atenuantes, la pena puede reducirse a seis (6) años de reclusión. Artículo 166 del Código Penal, *supra*, sec. 4272.

El elemento esencial del delito es la apropiación de un bien mueble ajeno sin violencia ni intimidación. *Pueblo v. Padró Ríos,* 105 D.P.R. 713 (1977). El significado de la palabra "*apropiar*" nos la da el inciso (5) del Artículo 7 del Código Penal de Puerto Rico e indica que incluye malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse o en cualquier forma hacer propio cualquier bien o cosa en forma temporal o permanente. *Id.*, sec. 3022-5. En *Pueblo v. Uriel Alvarez*, 112 D.P.R. 312, n.3 (1982), el Tribunal Supremo nos dice que "*la definición de apropiar es amplia e incluye una variedad de modalidades, entre ellas el fraude, pero aun así es indispensable que al efectuarse el fraude se obtengan de la persona defraudada bienes muebles. O sea, que el acusado se apropie ilegalmente -mediante fraude- de unos bienes que no eran suyos. Sin transferencia de propiedad mueble no se configura el delito*".

Por otro lado, bienes muebles incluye dinero, mercancías, semovientes, servicios, entre otros. Artículo 7 (8) del Código Penal, *id.* sec. 3022 (8).

El elemento mental requerido para configurar el delito de apropiación ilegal es la intención específica de apropiarse de los bienes. *Pueblo v. Miranda Ortiz,* 117 D.P.R. 188 (1986). El acto de apropiarse del bien mueble sin violencia ni intimidación, requiere además, que la apropiación sea de naturaleza ilegal. Es decir, que se trate de un acto en contravención de una ley, reglamento u orden. *Pueblo v. Miranda, supra*, a la pág. 193; Dora Nevares Muñiz, *Código Penal de Puerto Rico-Comentado y Revisado*, Instituto para el Desarrollo del Derecho, 1997, pág. 272.

En cuanto a los hechos específicos que nos ocupan en este caso, se ha dicho que la simple entrega de cheques sin provisión de fondos es diferente a la entrega de dicho cheque con la intención de defraudar. Cuando se trata de defraudar, el cheque u orden de pago, es el instrumento del engaño, por el cual la otra parte resulta perjudicada. Un ejemplo es cuando alguien realiza una compra y paga con un cheques sin fondos. El que entregó la mercancía lo hizo debido al cheque, que fue el instrumento del engaño. Este es un delito propiamente contra la propiedad, que se sanciona en el Código Penal vigente bajo los Artículos 165 y 166, *supra*. Dora Nevares Muñiz, *Informe de Revisión del Código Penal de Puerto Rico*, 27 Rev. Jur. Ú.I.A., págs. 389 y 390.

## V

Todo lo antes señalado nos lleva al tercer señalamiento de error del acusado-apelante, Silva Rivera, en donde alega que incidió el tribunal al determinar que se configuró el delito de apropiación ilegal agravada. Es preciso indicar que el tribunal recibió amplia prueba testifical sobre la ocurrencia de los hechos que dieron paso a las acusaciones radicadas contra el acusado-apelante, Silva Rivera. De los testimonios vertidos, y creídos por el tribunal, se desprende que el señor Alvarez Lombana le prestó $9,600.00 en efectivo al acusado-apelante. El acusado-apelante, Silva Rivera, **como garantía de que pagaría** la cantidad prestada, le entregó a Alvarez Lombana un cheque por la cantidad de $9,600.00. Dicho cheque estaba timbrado a nombre del acusado-

apelante, Silva Rivera, quien en el espacio correspondiente escribió la cantidad por la cual se giraba el cheque ($9,600.00). También escribió a nombre de quién se giraba el cheque (Alvarez Lombana) y luego lo firmó.

Alvarez Lombana testificó que desconocía que la cuenta del acusado-apelante, Silva Rivera, estaba cerrada; sin embargo, el propio acusado-apelante, Silva Rivera, testificó que **al momento de hacer el cheque sabía que la cuenta estaba cerrada** y que Alvarez Lombana también lo sabía. Esta es una de varias discrepancias en los testimonios vertidos. No obstante, es norma de derecho ampliamente reconocida que los jueces de primera instancia y los jurados son quienes están en mejor posición para aquilatar la prueba. *Pueblo v. Falcón Negrón*, 126 D.P.R. 75 (1990); *Pueblo v. Miranda Ortiz*, 117 D.P.R. 188 (1986). La apreciación de credibilidad hecha por éstos merece gran respeto y deferencia. En ausencia de error manifiesto, prejuicio, parcialidad o pasión, no intervendremos con su apreciación de la prueba. *Pueblo v. Sanabria Pérez*, 113 D.P.R. 694 (1983); *Pueblo v. Lebrón González*, 113 D.P.R. 81 (1982).

De la prueba vertida y creída por el juzgador de los hechos, se desprende que el acusado-apelante, Silva Rivera, **al momento de dar como garantía un cheque por la cantidad de $9,600.00**, recibió a cambio esa misma cantidad, pero en efectivo. Esa es precisamente la transferencia de propiedad mueble -mediante fraude- que se requiere para la configuración del delito de apropiación ilegal, la cual en este caso es agravada por razón de la cantidad de dinero envuelta. Por otro lado, se desprende la intención de defraudar porque el acusado-apelante, Silva Rivera, le dio a entender al señor Alvarez Lombana que el cheque podría ser cobrado en la fecha posdatada que se acordó poner en el cheque, además de que se dio a entender que había una cuenta bancaria abierta y que habría fondos para respaldar el pago del cheque expedido contra ella. Por lo tanto, el tercer error señalado no se cometió.

**VI**

El Artículo 271 del Código Penal, *id.*, sec. 4591, tipifica el delito de falsificación de documentos. ■ Es un delito de intención específica. Nevares-Muñiz, *supra*, pág. 435. La médula del delito consiste en la intención de perjudicar o causar daño o defraudar a otra persona con pleno conocimiento de la falsedad del escrito. *Pueblo v. Flores Betancourt*, 124 D.P.R. 867 (1989).

El Artículo 7(10) del Código Penal, *supra*, sec. 3022(10), define todo escrito como que *"incluye cualquier impreso, papel, carta, sello, escritura o firma de una persona, moneda, papel moneda, fichas, tarjeta de crédito o cualquier valor, derecho, privilegio u obligación"*.

El Artículo 271, *supra*, contempla dos (2) modalidades, a saber: (1) hacer en todo, o parcialmente, un documento, instrumento o escrito falso, mediante el cual se creare, transfiriere, terminare o de otra forma afectare cualquier derecho, obligación o interés, y (2) que falsamente alterare, limitare, suprimiere o destruyere, total o parcialmente, uno verdadero. *Pueblo v. Fernández Simono*, 140 D.P.R. 514, 521 (1996).

En la primera modalidad se crea un documento, instrumento o escrito falso imitando a uno verdadero y da la impresión de que el documento no es falso. La otra modalidad del tipo legal consiste en tomar un documento verdadero y alterarlo, suprimirlo o destruirlo total o parcialmente. Cuando se altera el documento, lo que se hace es añadirle o quitarle algo al documento verdadero. Esta segunda modalidad equivale a lo que en la tradición civilista se conoce como falsedad impropia. Nevares Muñiz, *supra*, a las págs. 434 y 435.

En *Pueblo v. Perazza*, 53 D.P.R. 588, 590 (1938), el Tribunal Supremo expuso que *"cuando para llevar a cabo el fraude falsamente se altera, falsifica, hace o emite cualquier título, documento, obligación, cheque, etc., el delito que se comete es el de falsificación."*

Cónsono con lo anterior, en *Pueblo v. Uriel Alvarez, supra*, el Tribunal Supremo se enfrentó a la siguiente situación: El apelante Uriel Alvarez le adeudaba $4,000.00 a una persona de apellido Román y expidió un

cheque personal a nombre de esa persona por la cantidad adeudada, girado contra un banco en Miami. Román endosó el cheque como pago parcial a favor a un tercero a quien le adeudaba un dinero. La tercera persona presentó el cheque al cobro, pero fue devuelto por motivo de cuenta cerrada. El Tribunal de Primera Instancia encontró al apelante culpable del delito de apropiación ilegal agravada. Sin embargo, el Tribunal Supremo revocó la sentencia y expuso que el acusado-apelante, Uriel Alvarez, de acuerdo a los hechos específicos del caso, no era culpable del delito de apropiación ilegal agravada. Aunque hubo una clara intención de defraudar al expedirse el cheque contra una cuenta cerrada, la conducta del apelante no generó ningún traspaso patrimonial porque la deuda no quedó saldada.

No obstante su determinación, el Tribunal Supremo aclaró que *"ello no significa que una persona que haga y circule un cheque sin tener cuenta en el banco y obtenga específicamente bienes muebles -dinero, servicios, etc.- a cambio de éste, no pueda, en casos apropiados, ser acusada y convicta de apropiación ilegal"*. Pueblo v. Uriel Alvarez, id., a la pág. 320; énfasis en el original.

En *Pueblo v. Uriel Alvarez, id.*, a la página 321, n. 8, el Tribunal Supremo hizo pronunciamientos importantes con relación a la expedición de cheques girados contra una cuenta cerrada:

*"De ordinario, visualizamos la falsificación de documentos únicamente bajo la óptica clásica de imitar, alterar o falsear la firma de otro o de manera material redactar un documento que no nos pertenece, sea público o privado. Nada más lejos de la verdad. La falsedad es material en el sentido de que la verdad cambiada recae sobre un objeto tangible -documento- creándolo o alterando uno legítimo. El apelante hizo falso, aunque parcialmente un documento: el cheque. A los fines del delito es irrelevante y nada importa que en su origen el cheque, como documento no cumplimentado, estuviera legítimamente en su poder. La falsificación parcial consistió en haberle puesto una fecha, nombre del acreedor, cantidad y su firma, y así suplirle los elementos y datos necesarios para hacerlo, como instrumento negociable, válido de su faz. En otras palabras, maliciosamente, a sabiendas de que carecía de una cuenta que respaldara ese cheque lo cumplimentó, llenó y firmó, completando y supliendo de ese modo todos los requisitos para hacerlo en apariencia legítimo. Mediante tal conducta fraudulenta -ardid y engaño-, no sólo simuló y representó poseer una cuenta bancaria activa y legítima, sino que hizo falsamente el cheque y con ello dio vida a un documento representativo de $4,000.00 poniéndolo en circulación al entregarlo como bueno y legítimo a su acreedor Román."*

[Enfasis suplido.]

Intimamente relacionado con el precepto anterior lo está el Artículo 272 del Código Penal, *supra*, sec. 4592, que lee de la siguiente manera:

*"§4592. Posesión y traspaso de documentos falsificados.*

*Toda persona que con intención de defraudar a otra posea, use, circule, venda, pase o trate de pasar como genuino o verdadero cualquier documento, instrumento o escrito de los especificados en la sección anterior a sabiendas de que los mismos son falsos, alterados, falsificados o imitados, será sancionado con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de catorce (14) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años."*

Este artículo constituye un complemento al Artículo 271, *supra*, y también constituye un delito de intención específica de defraudar. Es necesario que se demuestre que se posee con la intención de defraudar a otra persona y conociendo que el mismo es falsificado. En cambio, cuando se hace uso de un documento falso, conociendo que es falso, se infiere que se intenta defraudar a otra persona. Dora Nevares Muñiz, *Código Penal*

*de Puerto Rico-Revisado y Comentado,* Instituto para el Desarrollo del Derecho, 2000, a la pág. 536.

## VII

Años después de la opinión del Tribunal Supremo en *Pueblo v. Uriel Alvarez, supra,* la Asamblea Legislativa adicionó el Artículo 264A al Código Penal de Puerto Rico mediante la Ley Núm. 83 de 27 de octubre de 1993. En la Exposición de Motivos de la Ley Núm. 83, *id.,* se hizo constar que con el paso del tiempo, surgió una nueva modalidad de práctica fraudulenta la cual consiste en expedir, endosar o entregar un cheque, giro, letra u orden a sabiendas de que antes de su presentación al cobro se habrá de cancelar la cuenta designada para su pago. Con el fin de promover la seguridad en las transacciones comerciales con instrumentos negociables, se encontró necesario tipificar como delito la modalidad de fraude antes descrita. Por lo tanto, el Artículo 264-A del Código Penal, *supra,* sec. 4551a, lee de la siguiente manera:

*"§4551a. Expedición de cheques y otros contra una cuenta cerrada*

*Toda persona que con el propósito de defraudar a otra ordene a cualquier banco o depositario la cancelación de la cuenta designada para su pago en dicho banco o depositario a sabiendas de que antes de dicha cancelación habría extendido, endosado o entregado un cheque, giro, letra u orden para el pago de dinero con cargo a la cuenta cancelada, **o si girare contra una cuenta cerrada o inexistente,** o haya detenido el pago del instrumento luego de emitirlo sin justa causa, será sancionada con multa hasta el doble del importe de dicho cheque, giro, letra u orden, que no excederá de quinientos (500) dólares, o reclusión de un día por cada dólar que deje de satisfacer hasta un máximo de noventa (90) días, o ambas penas a discreción del tribunal. En todos los casos, el tribunal ordenará, además, que el girador rezarsa a la parte perjudicada con el importe impagado de dicho cheque, giro, letra u orden, más el interés legal prevaleciente y diez (10) dólares por concepto de gastos administrativos."*

[Enfasis suplido.]

Como podemos ver, la Ley Núm. 83, *supra,* no sólo tuvo el efecto de tipificar como delito la acción de girar un cheque y luego cerrar la cuenta, sino que también tuvo el efecto de tipificar específicamente la conducta de girar un cheque contra una cuenta cerrada o inexistente. Dicha conducta, como vimos, constituye un delito menos grave. ■

## VIII

Lo anteriormente señalado nos lleva a dilucidar los otros señalamientos de error del acusado-apelante, Silva Rivera, en el sentido de que no se configuraron los delitos de falsificación de documentos y posesión y traspaso de documentos falsificados. Tal y como vimos, el Tribunal Supremo en *Pueblo v. Uriel Alvarez, supra,* resolvió que al expedirse un cheque contra una cuenta cerrada, a sabiendas, se configura el delito de falsificación de documentos.

De acuerdo a la prueba presentada en el caso de autos, se desprende que el propio acusado-apelante, Silva Rivera, a sabiendas de que tenía una cuenta cerrada, le entregó un cheque contra dicha cuenta al señor Alvarez Lombana no sin antes suplirle a ese cheque los elementos y datos necesarios para hacerlo válido de su faz. Mediante su conducta fraudulenta, simuló y representó poseer una cuenta bancaria activa y legítima y circuló el cheque haciéndolo pasar como bueno y legítimo. Al así actuar, provocó que el señor Alvarez Lombana procediera a cobrar el importe del cheque para luego enterarse de que la cuenta estaba cerrada. Por lo tanto, no podemos decir que no se configuraron los delitos de falsificación y traspaso de documentos falsificados. ■

## IX

En el sexto señalamiento de error, el acusado-apelante, Silva Rivera, alega que erró el Tribunal de Primera

Instancia al no admitir en evidencia las copias al carbón de unos giros dirigidos a nombre de *"Ramón Alvarez"* por parte de *"Edwin Silva"*. Estos giros fueron presentados por la defensa, por primera vez en el juicio, con el propósito de *"probar"* que Ramón Alvarez Lombana conocía previamente a Edwin Silva Rivera, contrario a lo declarado por Alvarez Lombana. En segundo lugar, los giros se presentaron para *"demostrar"* que previo a los hechos de este caso, tanto Alvarez Lombana como Silva Rivera entraron en relaciones de prestamista-prestatario, con iguales condiciones a las dadas en este caso. Escrito de Apelación, a la pág. 17.

La Regla 95A de Procedimiento Criminal, *supra*, establece que *"previa moción del Ministerio Fiscal luego de que el acusado haya solicitado el descubrimiento de prueba bajo las cláusulas (3) y (4) del inciso (a) de la Regla 95, y dentro del término prescriptivo para someterla, el tribunal ordenará al acusado que permita al Ministerio Fiscal inspeccionar, copiar, o fotocopiar el siguiente material o información que está en posesión, custodia o control del acusado y que pretenda presentar como prueba en el juicio: (1) cualquier libro, papel, documento, fotografía u objetos tangibles; (2) cualquier resultado o informe de exámenes físicos o mentales y de pruebas científicas o experimentos realizadas con el caso en particular"*.

Por otro lado, la Regla 95B, *id.*, establece cuáles serán aquellas normas que regirán el descubrimiento de prueba. Específicamente, establece un deber continuo de informar, si antes o durante el juicio, una parte descubre prueba material adicional al que fue previamente requerido u ordenado y que está sujeto a descubrimiento bajo las Reglas 95 y 95A, *id.* Además, la parte que encuentre dicha prueba, deberá notificar prontamente de la existencia de esa evidencia o material adicional a la otra parte, al abogado de dicha parte o al tribunal. Incluso, una de las sanciones para el incumplimiento de presentar la prueba solicitada es prohibir la presentación en el juicio de la evidencia que se niega a descubrir. Véase además, Ernesto L. Chiesa Aponte, *Derecho Procesal Penal de Estados Unidos y Puerto Rico*, Ed. Forum, 1ra. ed., 1993, T. III, pág. 345.

De acuerdo a los autos originales de este caso, se desprende de diversas mociones presentadas por el propio acusado-apelante, Silva Rivera, que el tribunal dictó una orden permanente sobre advertencias y requerimientos, el 16 de febrero de 2000. De acuerdo a la moción de la defensa fechada el 7 de abril de 2000, en la orden dictada por el tribunal se *"señala que tanto el acusado como el que suscribe tienen derecho a reunirse con el Ministerio Fiscal y llevar a cabo el Descubrimiento de Prueba de acuerdo a la Regla 95 de Procedimiento Criminal"*. Autos Originales, Caso Criminal Núm. FPD00G0103, pág. 31. Además, se desprende de los autos originales que el acusado-apelante radicó una moción el 28 de julio de 2000, en la que aceptó que el tribunal dio otra orden el 27 de marzo de 2000 en la que le solicitó a cada una de las partes que sometieran determinados documentos como parte del descubrimiento de prueba. Por otro lado, el acusado-apelante informó al tribunal en esa misma moción que la evidencia que iba a ser utilizada en el juicio sería: (1) la declaración jurada del señor Alvarez Lombana; (2) el testimonio de los testigos citados para el juicio, y (3) cartas de interpelación. *Id.*, pág. 40.

Advertimos que los giros que se pretendieron presentar en evidencia no fueron anunciados por el acusado-apelante, Silva Rivera, ni fueron parte del descubrimiento de prueba realizado entre el ministerio fiscal y la defensa. Por cierto, a lo largo del juicio, el Ministerio Público objetó enérgicamente la presentación de dicha prueba por los fundamentos antes esbozados. Véase E.N.P., págs. 49-54; 63-67; 71-73; 153-154 y 156. Aún así, el tribunal permitió que las copias de los documentos fueran utilizadas por la defensa para determinar si el testigo Ramón Alvarez Lombana reconocía dichos documentos. Al serle presentadas esas copias, Alvarez Lombana testificó no reconocerlas. Véase E.N.P., págs. 67 y 70. Por lo tanto, entendemos que por no haber sido parte del descubrimiento de prueba entre las partes, no erró el Tribunal de Primera Instancia al no admitir en evidencia las copias de los giros antes mencionados.

En cuanto a las planillas de contribución sobre ingresos del acusado-apelante, Edwin Silva, la defensa pretendía presentarlas para demostrar que nunca existió un certificado de depósito por la cantidad de $15,000.00 a nombre de Edwin Silva Rivera. La importancia de esto recae en que el señor Alvarez Lombana alegó que

prestó el dinero en controversia después de ser informado que el acusado-apelante, Silva Rivera, contaba con un certificado de depósito que sirviera de garantía al préstamo que le estaba haciendo. Alega la defensa que las planillas prueban que no existió ese certificado **porque no se informaron en las mismas intereses generados por dicho certificado.**

Evidentemente se trataba de probar como cierto el contenido de las planillas de contribución sobre ingresos del acusado-apelante, Silva Rivera. Sin embargo, las copias de las planillas de 1998 y 1999 presentadas por la defensa, e identificadas por el tribunal con los números 4 y 5, son copias de copias, no copias certificadas expedidas por el Departamento de Hacienda. Así se desprende de los autos originales, en donde constan las copias identificadas por el Tribunal de Primera Instancia durante el juicio en su fondo. Sobre ese particular, la Regla 71 de Evidencia establece que:

*"El contenido de un récord público u otro documento que esté bajo la custodia de una entidad u oficina pública puede ser probado mediante copia certificada del original expedida por funcionario autorizado, o copia declarada correcta o fiel por un testigo que la haya comparado con el original. Si ello no es posible, a pesar del ejercicio de razonables diligencias por parte del proponente, otra evidencia secundaria del contenido del original será admisible."*

[Enfasis suplido.]

Aunque el Tribunal de Primera Instancia denegó la admisión en evidencia de las planillas bajo el fundamento de que eran materia impertinente, lo cierto es que las mismas no cumplieron con el requisito de la Regla 71 de Evidencia, *ibid*, es decir, el acusado-apelante, Silva Rivera, no cumplió con la exigencia de que el contenido de cualquier documento que esté bajo la custodia de una entidad u oficina pública, en este caso el Departamento de Hacienda, debe ser probado mediante copia certificada del original. Sin embargo, el fiscal no objetó por ese motivo, por lo que en esta etapa no podríamos excluir la evidencia ofrecida, basándonos en ese fundamento. Ahora bien, las copias de las planillas fueron rechazadas como evidencia por ser impertinentes. El Tribunal de Primera Instancia estuvo en lo correcto, ya que el que el certificado de depósito no se mencionara en las planillas de impuestos, no establece que el certificado no existe, como aduce el acusado-apelante, Silva Rivera. Es decir, no tenían valor probatorio para establecer el hecho que se quería probar con ellas. Véase, Ernesto L. Chiesa Aponte, *Tratado de Derecho Probatorio (Reglas de Evidencia de Puerto Rico y Federales)*, **Publicaciones J.T.S.**, 1998, pág. 25.

En conclusión, no se cometió ninguno de los errores que señala el acusado-apelante, Silva Rivera.

## X

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

Así lo acordó el Tribunal, y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2002 DTA 93**

**1.** Artículo 166 del Código Penal, 33 L.P.R.A. sec. 4272.

**2.** Artículo 271 del Código Penal, *id.* sec. 4591.

**3.** Artículo 272 del Código Penal, *id.* sec. 4592.

**4.** Se refiere a un certificado de depósito que alegadamente tenía el acusado-apelante, Silva Rivera. No se presentó prueba sobre la existencia del referido certificado.

**5.** Ello no impide que en un caso sin jurado, al finalizar la prueba de cargo, el acusado solicite su absolución perentoria bajo la Regla 135 de Procedimiento Criminal, *supra*, sin tener que presentar prueba de defensa. Chiesa Aponte, *supra*, pág. 419.

**6.** Sección 4591. Falsificación de documentos.

*"Toda persona que con intención de defraudar a otra hiciere, en todo o en parte, un documento, instrumento o escrito falso, mediante el cual se creare, transfiriere, terminare o de otra forma afectare cualquier derecho, obligación o interés, o que falsamente alterare, limitare, suprimiere o destruyere, total o parcialmente, uno verdadero, será sancionada con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de catorce catorce (14) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años".*

**7.** En el Informe de Revisión al Código Penal de Puerto Rico presentado por la Profesora Dora Nevares Muñiz en el año 1992, ésta propuso la creación de un tipo de defraudación que atendiera la siguiente conducta: *"expedir un cheque contra una cuenta cerrada con el propósito de no honrar el pago del mismo luego o previo de haberse expedido el cheque, o detener el pago de un cheque luego de haber sido expedido el mismo, en todos los casos con intención de defraudar al sujeto pasivo o a una tercera persona. Esta conducta tendrá una pena mayor a la severidad que el vigente Artículo 264".* Nevares-Muñiz, Informe de Revisión, *supra*, pág. 393.

**8.** El acusado-apelante, Silva Rivera, no hizo ningún planteamiento en su escrito de apelación bajo el principio de especialidad, relacionado con el Artículo 264A del Código Penal, *supra*. Por lo tanto, no tenemos que discutir ese punto. *Pueblo v. Ruiz Bosh*, 127 D.P.R. 762, 773 n. 3 (1991); *Pueblo v. Rivera Rodríguez*, 123 D.P.R. 467, 469 n. 1 (1989). Véase además, Hiram A. Sánchez Martínez, *Práctica Jurídica de Puerto Rico; Derecho Procesal Apelativo*, Lexis-Nexis de Puerto Rico, 2001, págs. 297-299.